UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

RYAN ZELEK

21 CR 496

Honorable John Blakey

**GOVERNMENT'S MEMORANDUM ON RESTITUTION**

On March 19, 2025, pursuant to a written plea agreement, defendant entered a plea of guilty to Count Two of the Indictment. Presentence Investigation Report (PSR) ¶ 3. The plea agreement as well as the PSR reflect that restitution in an amount to be determined by the Court is mandatory and agreed. Minor 1 as well as six of the individuals depicted in the images and videos stored on defendant's cellular telephone, a thumb drive, and an SD card have provided victim impact statements and requested restitution. The government submits this memorandum to aid the Court in imposing restitution and submits the restitution packages under separate cover to the Court due to the sensitive nature of the material and privacy interests of the victims[1].

**LEGAL FRAMEWORK**

Under the law, a defendant must pay for "the full amount of the victim's losses," which may include the following:

(A) medical services relating to physical, psychiatric, or psychological care;
(B) physical and occupational therapy or rehabilitation;
(C) necessary transportation, temporary housing, and child care expenses;
(D) lost income;

---

[1] The restitution packages were previously provided to defense counsel via email and the restitution packages will be uploaded to via the Court's Box link for review.

(E) attorneys' fees, as well as other costs incurred; and

(F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(1), (3). Section 2259(a) makes restitution mandatory.

Courts have no discretion to "award restitution for anything less than the full amount of the victim's losses." *United States v. Desnoyers*, 708 F.3d 378, 389 (2d Cir. 2013) (quoting *United States v. Walker*, 353 F.3d 130, 131 (2d Cir. 2003)). Congress intended as much because "[t]he MVRA's overriding purpose is to compensate victims for their losses." *United States v. Roberts*, 698 F.3d 937, 943 (7th Cir. 2012), aff'd, 572 U.S. 639 (2014) (internal citations and quotations omitted). A court may not decline to issue a restitution order because of "the economic circumstances of the defendant" or "the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source." 18 U.S.C. § 2259(b)(4). A victim's losses for purposes of restitution may be retrospective or prospective, including damages for the cost of future therapy. *United States v. Danser*, 270 F.3d 451, 455 (7th Cir. 2001); *United States v. Whitley*, 354 F.Supp.3d 930, 934 (N.D. Ill. 2018) (collecting cases). Victims do not need to be in therapy or even interested in seeking therapy at the time of restitution. *Whitley*, 354 F.Supp. 3d at 935.

In terms of possession of images, in *United States v. Paroline*, 134 S.Ct. 1710 (2014), the Supreme Court found that the defendant was required to pay restitution to the victims of images he possessed. As the Court stated, "While it is not possible to identify a discrete, readily definable incremental loss . . . it is indisputable that

2

[the defendant] was a part of the overall phenomenon that caused her general losses." *Id.* at 1726. The Court stated that it was "neither necessary nor appropriate to prescribe a precise algorithm for determining a proper restitution amount." *Id.* at 1728. But the Court suggested factors that a court might consider when determining a restitution amount:

(1) The number of past defendants;
(2) Reasonable predictions of future offenders likely to be caught;
(3) Any reliable estimate of the broader number of offenders involved;
(4) Whether the defendant reproduced or distributed the images;
(5) Whether the defendant was involved in the initial creation of the images;
(6) How many images of the victim the defendant possessed; and
(7) Other facts relevant to the defendant's causal role.

*Id.*

In *United States v. Sainz*, the Seventh Circuit considered an order of restitution for $8,400 in a case where the defendant possessed six images of the victim. 827 F.2d 602 (7th Cir. 2016). The amount was derived by dividing the victim's total losses by the number of prior restitution orders referred to by the court as the "1/n method." In affirming the restitution order, the court noted that "*Paroline* addressed a difficult, nearly intractable problem." *Id.* at 605. The court also noted the district court's considerable discretion and stated that that a district court was not required to consider every factor mentioned in *Paroline. Id.* at 606. The Seventh Circuit expressly endorsed the "1/n method," but observed that a more nuanced method might be required where there were very many, or very few prior orders. It also found that the restitution ordered was, as required by *Paroline*, neither severe nor trivial. *Id.*

3

**VICTIMS IN THIS CASE**

## I.   MINOR 1

Minor 1 is seeking restitution and, in June 2026, provided medical records and a tuition statement in support of her request. Additionally, in October 1, 2025, an assessment of future therapeutic needs was submitted by third party licensed mental health counselor (LMHC) retained by the government. As explained below, the government seeks $15,789 in restitution for Minor 1.

*Medical Services Relating to Psychiatric or Psychological Care*

The October 1, 2025, report recommends restitution in the amount of $10,800 for Minor 1. However, based on the high end of the estimated sessions and cost as well as the medical records provided by Minor 1, as explained below, that recommendation is insufficient.

In the report, the LMHC opines that Minor 1 may need upwards of 89 counseling sessions and, based on data available in October 2025, the LMHC estimates that each session would cost no less than $150. As noted, the high-end of the estimated costs of counseling sessions for Minor 1 is then $13,350. This amount does not include costs of transportation, lost wages, or inflation and general year-to-year increases in costs for services.[2]

The medical records provided by Minor 1 document that her prior[3] provider recommended *weekly* individual psychotherapy sessions. This recommendation by

---

[2] While inflation and general year-to-year increases in costs for services are noted in the report, there is no explanation why the LMHC recommended the amount of only $10,800.
[3] Minor 1 discontinued counseling sessions due to financial constraints only and has been pursuing other services rendered at no cost or on a sliding scale.

Minor 1's actual provider is informative when compared to the LMHC's estimate of 12 – 52 sessions for Minor 1's initial course of individual treatment. There are, of course, 52 weeks in a calendar year. Thus, the minimum number of sessions necessary per Minor 1's actual provider for Minor 1's initial course of treatment is 52. Without factoring in inflation and general year-to-year increases in costs for services, the cost of 52 sessions at an estimated $150 per session is $7,800.

The LMHC further opined that subsequent courses of treatment – anywhere from 12 to 36 sessions – will be needed for Minor 1. Again, without accounting for inflation or general year-to- year increases in costs for services, the cost of 36 sessions at an estimated $150 per session is $5,400. The opinion that subsequent sessions will be needed are both supported by scientific research as well as the information provided by Minor 1 in her victim impact statement.

More than any other crime, sexual assault to children causes a harm that plays out over time and compounds itself. Defendant's actions have already impacted Minor 1's life. Minor 1 was only 13 years old at the time of the crime. She was unable to attend a mainstream high school due to the mental health impact from the trauma inflicted on her by defendant. Minor 1 explained having to give up a high school experience, including time with friends and being able to walk across the stage on graduation day. Minor 1 disclosed that she still suffers from anxiety and depression and is fearful of being in public without a trusted friend or family member. She does not feel that she can function normally in a social environment.

In sharing her experience since the crime, Minor 1 demonstrated how she has

5

already had to confront and negotiate the impact of defendant's actions. Minor 1 is now an adult – a very young adult. As an adult, she will make decisions about her future: navigating friendships, dating and romantic relationships, navigating independence from family and friends. At every major life transition, Minor 1 will have to again confront and negotiate the impact defendant's actions have had on her mental health, her sense of self, her sense of safety, and her ability to trust others.

Sexual assault can also make child victims more vulnerable to re-victimization in the future. *See, e.g., United States v. Estep*, 378 F. Supp. 2d 763, 765 (E.D. Ky. 2005) (awarding restitution for a victim of sexual abuse and exploitation because the harm placed the juvenile victim "in a very high risk for re-victimization, PTSD, and depression"); *see also* INSTITUTE OF MEDICINE AND NATIONAL RESEARCH COUNCIL, CONFRONTING COMMERCIAL SEXUAL EXPLOITATION AND SEX TRAFFICKING OF MINORS IN THE UNITED STATES 81 (Ellen Wright Clayton, Richard D. Krugman & Patti Simon eds., 2013) (citing Stoltz et al., Associations Between Childhood Maltreatment and *Sex Work in Cohort of Drug-Using Youth*, SOCIAL SCIENCE & MEDICINE 5 (2007), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2254224/pdf/nihms-29950.pdf) ("[C]hildren who are sexually victimized develop psychologically and emotionally in ways that make them vulnerable to continuing sexual predation.") (citing Steel & Herlitz, *The Association Between Childhood and Adolescent Sexual Abuse and Proxies for Sexual Risk Behavior: A Random Sample of the General Population of*

*Sweden*, CHILD ABUSE & NEGLECT (2005)); id. (discussing various studies which state that "survivors of child sexual abuse may display sexualized behaviors" where past abuse may lead to future sexual risk behavior due to "psychological symptoms such as depressive mood, poor self-esteem, lack of assertiveness, poor self-work, and [PTSD]"); id. ("Child neglect, physical abuse, and sexual abuse are commonly thought to be risk factors for commercial sexual exploitation and sex trafficking of minors.").

In a 2011 study, the conservative average lifetime medical cost to a victim of child maltreatment was found to be $32,648 in short-term health care costs and $10,530 in long-term health care costs.[4] Courts have cited relevant social science research and evidence to support restitution awards, noting that such evidence indicates that "victims of childhood trauma, including sexual abuse and/or exploitation, are more likely to experience difficulties with substance abuse, obesity, high level promiscuity, depression, anxiety, posttraumatic stress disorder, medical diseases, and relational problems later in life." *United States v. Bour*, No. 2:13-CR-35, 2015 WL 58761, at *6 (N.D. Ind. Jan. 5, 2015); *see also Whitley*, 354 F.Supp.3d at 935; *Baker,* 672 F.Supp.2d at 774.

The cost of one initial session, a 52-session course of individual treatment, and an additional 36 sessions of subsequent courses of treatment at $150 per session is $13,350. However, given the research cited as well as Minor 1's actual

---

[4] Xiangming Fang, Derek S. Brown, Curtis S. Florence, & James A. Mercy, *The Economic Burden of Child Maltreatment in the United States and Implications for Prevention*, 36 CHILD ABUSE & NEGLECT 156, 161 (2012).  This study is attached as Sentencing Exhibit 1.

experiences as documented by her medical records, it is unlikely that two years and 6 months[5] of therapy will be sufficient to cover Minor 1's losses given Minor 1's young age. The proposition that $13,350 is not sufficient is further supported by the fact that this cost analysis does not account for inflation and general year-to-year increases nor does it cover necessary transportation or lost income which may be anticipated given the need for time to attend counseling as well as the anxiety, depression, and fear of public places Minor 1 battles on a daily basis and detailed in her victim impact statement. For that reason, an additional $1,650 is requested.

*High School Tuition (any other losses suffered by the victim as a proximate result of the offense)*

As explained in her victim impact statement, due to the trauma suffered from defendant's actions defendant was unable to attend mainstream high school or an alternative school in the impact program. In her own words, Minor 1 explained "my only solution was to transfer to [name of school], an online school where I was only ever home." In support of her request for restitution as to pertains to needing to attend an online school in order to finish high school, Minor 1 has submitted a tuition statement in the amount of $789.00

## II. Victims Identified in Images or Videos Possessed by Defendant

### a. Victim Aster

Victim Aster requests restitution in the amount of $3,000 with restitution received to be prioritized to Minor 1. A restitution package in support of this request

---

[5] Thirty-six additional sessions equate to three sessions per month for 12 months or two sessions per month for 18 months.

along with a victim impact statement were submitted by representation for Victim Aster. Originally, Victim Aster requested the amount of $10,000 in the restitution package, but in an email correspondence dated December 3, 2025, representation for Victim Aster agreed to resolve the issue of restitution in the amount of $3,000. Victim Aster has been awarded restitution in 68 cases with an average award of $4,139.71.

### b. Victim Chelsea

Victim Chelsea requests restitution in the amount of $3,000. A restitution package in support of this request along with a victim impact statement were submitted by representation for Victim Chelsea. Originally, Victim Chelsea requested the amount of $10,000 in the restitution package, but in an email correspondence dated December 3, 2025, representation for Victim Chelsea agreed to resolve the issue of restitution in the amount of $3,000. Victim Chelsea has been awarded restitution in 285 cases with an average award of $4,343.86.

### c. Victim Sally

Victim Sally requests restitution in the amount of $7,500. A restitution package in support of this request along with a victim impact statement were submitted by representation for Victim Sally. Victim Sally has been awarded restitution in 233 cases with an average award of $3,293.48

### d. Victim Savannah

Victim Savannah requests restitution in the amount of $7,500. A restitution package in support of this request along with a victim impact statement were

submitted by representation for Victim Savannah. Victim Savannah has been awarded restitution in 237 cases with an average award of $3,235.44.

### e. Victim Skylar

Victim Savannah requests restitution in the amount of $7,500. A restitution package in support of this request along with a victim impact statement were submitted by representation for Victim Skylar. Victim Skylar has been awarded restitution in 301 cases with an average award of $3,569.96.

### f. Victim Sloane

Victim Sloane requests restitution in the amount of $10,000. A restitution package in support of this request along with a victim impact statement were submitted by representation for Victim Sloane. Victim Sloane has been awarded restitution in 892 cases with an average award of $4,543.41.

## III. Conclusion

As noted above, the government will provide the restitution requests, the medical records provided by Minor 1 in support of her restitution request, and a table providing information for each victim.

Respectfully submitted,
ANDREW S. BOUTROS
United States Attorney

By:  */s/ Kristin M. Pinkston*
Kristin M. Pinkston
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604

10